**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Android Industries, Inc., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 18 C 50055 |
| | ) | |
| UAW Local 1268, | ) | |
| | ) | |
| *Defendant*. | ) | Judge Frederick J. Kapala |

**ORDER**

Plaintiff's application and motion to vacate arbitration award [1] is denied. Defendant's motion to enforce arbitration award [11] is granted. The arbitration award is enforced and this case is closed.

**STATEMENT**

Plaintiff, Android Industries, Inc. ("Android") has filed an application and motion pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking to vacate the November 15, 2017 Arbitration Award issued by an arbitrator selected pursuant to the parties' collective bargaining agreement ("CBA"). In response, defendant, UAW Local 1268 ("Union"), has moved to enforce the arbitration award. For the reasons that follow, Android's application and motion is denied and the Union's motion is granted.

**I. FACTS**

The material facts are not in dispute. Android and the Union were parties to a CBA governing the terms and conditions of the employment of bargaining unit employees at Android's Bel-II suspension plant in Belvidere, Illinois. On December 23, 2016, due to a change in vehicle production lines at Chrysler's Belvidere Assembly Plant, Android closed its Bel-II suspension plant and terminated all bargaining unit employees. Prior to the plant closing, the parties entered into a Closing Agreement which provided that "[e]mployees actively at work who are released as a direct result of the plant closing or on lay off or medical leave status as of the date of the plant closing will be eligible for vacation pay pursuant to the Collective Bargaining Agreement."

On January 3, 2017, the Union filed a grievance asserting that Android violated Article 15, Section 5 of the CBA, which deals with unused vacation, by failing to pay bargaining unit employees their unused 2017 vacation pay which they had earned and accrued based on hours worked in 2016. Android denied the grievance taking the position that the bargaining unit employees were not entitled to 2017 vacation pay which had been earned and accrued in 2016 because they were no longer actively employed by Android during the calendar year 2017.

An arbitration hearing was held on August 15, 2017, before arbitrator Jeanne M. Vonhoff. On November 15, 2017, the Arbitrator issued a written Opinion and Award sustaining the Union's

grievance. The Arbitrator began by delineating the relevant provisions of the CBA. Article 15, Section 1 of the CBA is styled "vacation" and provides:

> Vacation is a benefit calculated and earned yearly based on the amount of hours a Team Member worked in the prior calendar year. . . . In the year of hire, vacation will be pro-rated as follows, and able to be used upon achieving seniority:
>
> | When (Hired) | Vacation Days |
> |---|---|
> | January - March | 5 -days |
> | April - June | 4 - days |
> | July - September | 2 - days |
> | October - December | 0 - days |
>
> Based on the employee's seniority during the vacation year, active full-time Team Members shall be eligible for:
>
> | When | Vacation Days |
> |---|---|
> | Year of 1st Anniversary | 10 Days (80 hrs.) |
> | Year of 2nd Anniversary | 15 Days (120 hrs.) |
> | Year of 10th Anniversary | 17 Days (136 hrs.) |
> | Year of 20th Anniversary | 20 Days (160 hrs.) |

Article 15, Section 2, is styled "accruing vacation days" and provides:

> All eligible team members accrue vacation beginning January 1 and ending December 31 (the calendar year). . . .
>
> **Vacation hours are accrued** per the following formula:
>
> Vacation = (Total Number of **Straight Time Hours** Worked/1600) x **Vacation Hours Allotment** = Vacation available in new calendar year. Notwithstanding anything to the contrary, all seniority Team Members will be granted five (5) vacation days per year. Earned vacation hours not equal to a full day or four (4) hour increment of vacation time will be paid for actual earned vacation time but will be scheduled as if they were rounded up to the nearest increment.

Article 15, Section 5, is styled "unused vacation" and provides:

> Earned but unused vacation will be paid to team members at the end of the year. All vacation values will be calculated at the team member's base rate of pay at the time of use or payout. Upon separation of employment, Android will pay unused and accrued vacation in the team member's final paycheck.

Next, the arbitrator stated the positions of the parties as follows:

> [T]he Union relies primarily upon the last sentence of Article 15, Section 5 which states,

> "Upon separation of employment, Android will pay unused and accrued vacation in the team member's final paycheck."

According to the Union, the vacation hours that the employees accrued in 2016 constitute "unused and accrued vacation" and therefore, under the plain language of Article 15, Section 5, vacation pay for these hours should have been included in the Grievants' final paychecks.

> The Employer relies primarily upon language in Section 1 of Article 15 which states,

> "Vacation is a benefit calculated and earned yearly based on the amount of hours a Team Member worked in the prior calendar year… Based on the employee's seniority during the vacation year, active full-time Team Members shall be eligible for:"

This language is followed by a chart which sets forth numbers of vacation days, based upon the employee's tenure with the Company. Employees with one year of seniority receive 10 days of vacation under this chart, and this amount rises to 15 days of vacation after two years, 17 days after 10 years, and 20 days after twenty years.

> The Employer argues that under this language, active employment in 2017 is an eligibility requirement for an employee to collect any vacation benefit based upon hours worked in 2016. Because there were no active full-time Team Members in 2017, the Company argues that no one was eligible for vacation, based on the 2016 hours. As employees were terminated at the end of 2016, the Company paid them for what it considers unused "2016 vacation," based upon hours worked in 2015, and argues that no further vacation benefits are due to employees, based upon the hours they worked in 2016.

The arbitrator then reasoned in pertinent part as follows:

> Section 1 is general in nature and does not specifically address the issue of how vacation benefits are to be handled upon separation. In contrast, the language of Section 5 specifically addresses the situation of how vacation benefits are to be paid "upon separation from employment." It requires that upon separation, "Android will pay unused and accrued vacation." The question in this case is whether the Parties intended the situation at issue here–where the employees have been separated from employment, through the Employer's action, before they can use certain vacation benefits–to require payment of those benefits as "unused and accrued vacation" specified in Section 5.
>
> . . . .
>
> Article 15, Section 5 of the collective bargaining agreement here specifically uses the term "unused and accrued vacation" to describe a monetary sum which is due to employees in their final paycheck. The term does not exist in a vacuum, but rather is contained within an Article of the Agreement which defines how vacation

3

benefits are earned or accrued. The Arbitrator concludes that the Parties intended the term "accrued vacation" under Section 5 to refer back to the term "accruing vacation days" in Section 2, which sets out the basic formula for the accrual. Once an employee earns or accumulates vacation days by working over a period of time, the vacation days are referred to as "accrued," under Section 2. Once accrued, benefits are generally due to an employee under the normal meaning of the word "accrued:" the definition of "accrue" is "to accumulate or have due after a period of time," according to the online version of the Merriam Webster Dictionary. The example provided in the Dictionary to explain this meaning of "accrue" is "accrue vacation time." Thus, the normal meaning of the word "accrued" and a straightforward reading of the language of Sections 2 and 5 of this Agreement, support the position that the "unused and accrued" vacation benefits due upon separation under Section 5 includes payment for the "unused" vacation days which have been "earned" or "accrued" under Section 2. There is no limitation in the language of Section 5 with regard to the "unused and accrued" vacation time, thus suggesting that the Parties intended to include all the unused vacation time accrued up until the point of "separation."

The Company argues, however, that other language in the Agreement supports its position that the "computation formula" in Section 2 is not absolute, but is subject to other eligibility requirements set forth in Section 1. Thus, even though Section 2's computation formula would appear to require 104 hours of vacation pay for an employee with one year's seniority, Section 1 makes clear that only 80 hours are due. Union Local President Welitschinsky readily acknowledged that this reflects the intent of the Parties, as demonstrated in the chart in Section 1, which sets out 2 weeks' vacation for employees with one year of seniority. This is the remedy the Union seeks in the grievance. The Company also points out that employees receive some vacation in their first year of employment, and that all employees receive a minimum of one week of vacation, even though these benefits are not strictly based on the Section 2 computations.

These are specific exceptions, agreed to by the Parties, where employees are granted either more or less favorable vacation benefits than would otherwise be granted under strict application of the formula for accruing vacation benefits set forth in Section 2. However, these exceptions do not establish that there is no connection between the language of Section 5, which requires the payment of "unused and accrued" vacation benefits, and Section 2, which sets forth the general method for "accruing" such benefits. The language of Section 5 refers simply to "unused and accrued vacation," and the plain language of this broad formulation suggests an intent to include the hours "accrued" under Section 2, subject to any limitations or enhancements on those amounts set forth in other sections of the Agreement.

The Company argues, however, that employees generally are not permitted, under this collective bargaining agreement, to collect vacation benefits in the year that they are accrued. It is true that normally an employee would not be able to take the time off which was accrued in 2016 until 2017, under the new "pay it backward"

4

    terms of this Agreement, subject to the two exceptions discussed above for new hires. As the Employer notes, the end-of-year payouts of unused vacation benefits under Section 5 typically do not include benefits for vacation days accrued in that year. However, up until now, the employee still retained the opportunity to receive the benefit in the following year of his hours accrued in the prior year, by either taking the vacation or the payout of vacation benefits at the end of that year. The question before the Arbitrator is how the Parties intended to interpret the language of Section 5, in conjunction with other language in Article 15, in the situation where the employee cannot take in 2017 the vacation time that he accrued in 2016, because he is no longer employed at that point.

. . . .

    Under this Agreement, the language of Section 5 establishes what is to happen with vacation benefits when employees are separated from employment: unused and accrued benefits are to be paid to employees in their final paychecks. Therefore, the Parties have agreed to explicit contract language which covers the issue raised by the Grievants here. Contract language which is specific to the issue raised by the grievance controls over more general contract language, and in this case the specific language of Section 5 controls over the more general provisions of Article 15. How Arbitration Works, Elkouri & Elkouri, 6th ed. p. 471.

    There are no limitations on the terms "unused and accrued" in Section 5 or upon the term "separation." The evidence establishes that vacation is "accrued" under Section 2, subject to a few limitations and enhancements contained in other parts of the Agreement. The Parties used the broad term "unused and accrued" to describe the vacation benefits due upon separation and therefore, the Grievants here were due, in their final paychecks, the full amount of the unused vacation benefits they had accrued during their employment, including those accrued in 2016. The fact that they may also have received "unused and accrued" benefits based upon 2015 in their final paychecks does not change this result, or constitute "double counting." In this case, the normal end-of-the-year vacation payout set forth in the first sentence of Section 5, based upon 2015 hours, coincided with a payment triggered by the requirement in the last sentence of Section 5 to pay all unused and accrued vacation benefits upon separation, which includes 2016 accrued hours. This interpretation does not constitute "double counting" of any vacation benefits; it simply includes unused hours earned and accrued over two years, due to the unusual situation in which all employees were separated at the end of 2016. And, as the Union points out, all of these benefits were "costed out" in the current labor Agreement, during bargaining. For all the reasons set forth above, the evidence establishes that the Employer violated Article 15 of the Agreement when it failed to pay Grievants all of their unused and accrued vacation benefits, including vacation days accrued during 2016.

The arbitrator concluded:

> The grievance is sustained. The Company violated Article 15, Section 5 when, upon separating Grievants from employment in December, 2016, the Company failed to pay unused vacation benefits accrued in 2016. The Company shall make the Grievants whole for all unused and accrued vacation benefits. The Arbitrator shall retain jurisdiction solely over the remedy portion of this Award.

On February 13, 2018, Android filed the instant action seeking to vacate the award. The Union responded with a motion to enforce the arbitration award.

## II. ANALYSIS

A federal court's review of an arbitral award rendered pursuant to a collective bargaining agreement is "extremely limited." U.S. Soccer Fed'n, Inc. v. U.S. Team Players Ass'n, 838 F.3d 826, 831 (7th Cir. 2016); Amax Coal Co. v. United Mine Workers of Am., Int'l Union, 92 F.3d 571, 575 (7th Cir. 1996). This is due to the strong "federal policy of settling labor disputes by arbitration," which "would be undermined if courts had the final say on the merits of awards." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 596 (1960). Thus, an award should be vacated where it fails to "draw[ ] its essence from the collective bargaining agreement." Id. at 597. The Seventh Circuit has elaborated on the hyper-deferential review of arbitral awards as follows:

> [S]o long as the award is based on the arbitrator's interpretation–unsound though it may be–of the contract, it draws its essence from the contract. . . . It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to "draw its essence from the collective bargaining agreement."

Ethyl Corp. v. United Steelworkers of Am., AFL–CIO–CLC, 768 F.2d 180, 184-85 (7th Cir. 1985 (citations omitted)). The Supreme Court further underscored the narrowness of this standard as follows: "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union, AFL–CIO, et al. v. Misco, Inc., 484 U.S. 29, 38 (1987). It is only where "there is no possible interpretive route to the arbitrator's award" that a court should vacate. Amax, 92 F.3d at 576; see also Hill v. Norfolk & W. Ry. Co., 814 F.2d 1192, 1194-95 (7th Cir. 1987) ("[T]he question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract. If they did, their interpretation is conclusive." (citations omitted)). Hence, the Seventh Circuit has made clear that the party seeking to set aside the arbitrator's final award has a "heavy burden." Dexter Axle Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 90, Lodge 1315, 418 F.3d 762, 767 (7th Cir. 2005). Given this hyper-deferential legal standard and the record before the court, it cannot be said that the arbitrator in this case was not "even arguably construing or applying the contract and acting within the scope of his authority." United Paperworkers, 484 U.S. at 38.

Android offers various arguments to support its position. It contends that the arbitrator exceeded her authority by deleting from the CBA the vacation-eligibility requirements within Section 1, and changing the payout terms. In particular, it is Android's contention that the arbitrator deleted

the eligibility clause in Section 1 of the CBA–which limited any vacation to "active full-time Team Members" during the vacation year–and determined that vacation pay was a form of deferred compensation earned in the prior year, while ignoring case law that limits this deferred compensation theory to agreements that do not have unsatisfied eligibility clauses.

A fair reading of the arbitrator's order does not show that she deleted the eligibility clause of Section 1 which provides that "[v]acation is a benefit calculated and earned yearly based on the amount of hours a Team Member worked in the prior calendar year. . . . Based on the employee's seniority during the vacation year, active full-time Team Members shall be eligible for" varying amounts of vacation days. It is clear that this language conditions eligibility for vacation benefits upon being an "active full-time Team Member," but it does not clearly condition eligibility on having that status during the "vacation year." Consequently, it was reasonable to conclude from the language of the CBA that the parties intended that "the employee's seniority during the vacation year" was to be determinative of the amount of vacation the employee would receive and only required the employee to be an "active full-time Team Member" at the time he or she takes the vacation time off or is paid out for the vacation. Under that reasonable interpretation, in December 2016 all active full-time Team Members at the Bel-II suspension plant were being paid-out for accrued and unused vacation "upon separation from employment," a circumstance Section 5 specifically addresses. Thus, the arbitrator did not delete the Section 1 eligibility requirement. Instead, the requirement was satisfied and the arbitrator then applied Section 5 which specifically addresses payment for unused and accrued vacation in the team member's final paycheck upon separation of employment.

In any event, even if the court disagreed with the arbitrator's interpretation of the applicable provisions of the CBA, it would not be permitted to vacate her award. See United Paperworkers, 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."). Consequently, Android has failed to satisfy its heavy burden of showing that the arbitrator's award exceeded the powers granted to her by the parties under the CBA by demonstrating that "there is no possible interpretive route to [her] award." See Amax, 92 F.3d at 576.

Android's argument that the arbitrator ignored the eligibility clause of Section 1 and erroneously relied on Infant Socks, Inc., 51 Lab. Arb. 402 (1968), to support the theory that vacation time is a form of deferred compensation is also unpersuasive. In response to Android's position that Section 2 merely provides a vacation calculation formula utilized at the beginning of a vacation year when the employee becomes eligible for vacation–and does not provide for the actual accrual of vacation time–the Arbitrator found that the use of the term "accrued" in Section 2 demonstrated otherwise based on the normal dictionary meaning of that term and that:

> Paying employees a monetary sum for unused vacation time every year and tying vacation benefits to hours worked and to wage rates all demonstrate an intent by the Parties to treat vacation benefits as deferred income or compensation, which they may collect if the accrued vacation is not used as paid time off.

The CBA clearly provides that unused vacation may be paid out at the employee's normal rate of pay under certain circumstances. Therefore, the court agrees that under those circumstances vacation

7

benefits are fairly characterized as deferred compensation. Android maintains that the existence of vacation earned and paid in an employee's first year–as set forth in the CBA–belies any interpretation that vacation is deferred compensation. The court disagrees, vacation is fairly characterized as deferred compensation if not taking it as time off from work later results in a monetary payout and the arbitrator reasonably interpreted the CBA as providing different payout times depending on the circumstances. In any event, any misinterpretation in this regard or mistaken reliance on Infant Socks does not take away from the arbitrator's analysis keying on the normal meaning of the word "accrue" used in Section 2. Further, even if this part of the arbitrator's analysis were erroneous, it would not result in vacature of the award for failure to interpret the contract. See Ethyl Corp., 768 F.2d at 184-85 (holding that even an unsound interpretation of the contract is drawn from the essence of the contract and therefore not subject to vacature).

Next, Android maintains that the arbitrator exceeded her authority by ignoring and changing the unambiguous payout language in Section 5 making clear that earned and unused vacation is paid at the end of the year. Android explains that employees' earned but unused vacation was paid out at the end of the year such that employees were "zeroed out" even in the year of hire. According to Android, this practice shows that the language in Section 5 regarding payout for separated employees is clearly referring to accrued vacation that was unused in the year of separation, here 2016. But Android is merely reformulating its argument that CBA requires the separated employees to be active full-time Team Members in 2017 in order to be paid out for vacation accrued in 2016. The court has already found that the arbitrator had a different interpretation of the provisions of the CBA which, right or wrong, must be allowed to stand under the hyper-deferential review of an arbitral award.

Android also contends that the arbitrator exceeded her authority by making the finding without sufficient evidentiary support that Android had "costed-out" the vacation benefits at issue during negotiation of the CBA. Even if that is true, Android does not explain how this remark shows that the arbitrator did not interpret the CBA.

### III. CONCLUSION

For all of these reasons, Android's application and motion to vacate the arbitration award is denied. The Union's motion to enforce the arbitration award is granted. The arbitration award is enforced.

Date: 12/20/2018  ENTER:

_____
FREDERICK J. KAPALA

District Judge